UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Grimmett,<br><br>        Plaintiff,<br><br>v.<br><br>Minnesota Department of Corrections et al,<br><br>        Defendants, | Civ. No. 12-943 (JNE/LIB)<br><br>**REPORT AND RECOMMENDATION** |

This matter came before the undersigned United States Magistrate Judge upon Defendants' Motion to Dismiss. The motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' motion be granted in part and denied in part.

### I.    BACKGROUND

Michael Grimmett (Plaintiff) asserts five causes of action that arise out of an assault he sustained while he was incarcerated at MCF-Stillwater. (Compl. [Docket No. 1] ¶¶ 24-30). Plaintiff's factual allegations, which must be accepted as true for purposes of this motion, are as follows. On February 22, 2007, Plaintiff was working at the metal shop (also known as the R-shop) in MCF-Stillwater. (Id. ¶¶ 24-25). The metal shop was operated by Defendant MINNCOR Industries. (Id. ¶ 26). Prior to the assault, Plaintiff was in Defendant Fairbanks's office, the foreman of the metal shop, discussing blueprints for a job. (Id. ¶¶ 27-29). As Plaintiff was exiting Defendant Fairbanks's Office, another inmate, Guy Jackman, "bludgeoned Plaintiff's skull with a heavy lead pipe at least five times." (Id. ¶ 30). Although a correctional officer, Officer John Doe, had been assigned to guard the metal shop, because he had been

1

"clashing with Defendant Fairbanks," he "stopped manning his post in the R-shop as assigned by Defendant John Doe Correctional Lieutenant." (Id. ¶ 28). Defendant Fairbanks did not physically intervene in the assault but instead radioed correctional officers for help. (Id. ¶ 30). The assault lasted for several minutes before a "MINNCOR employee intervened and pushed Inmate Jackman off Plaintiff until help arrived." (Id.)

As a result of the assault, Plaintiff suffered a traumatic brain injury. (Id. ¶ 31). He suffered a depressed skull fracture, and during a craniectomy a portion of his skull was removed and replaced with a metal plate. (Id.) Plaintiff also required plastic surgery to repair multiple facial fractures. (Id.) Plaintiff was "clinically dead" twice—once during transport from MCF-Stillwater to Regions Hospital and once during his operation for the traumatic brain injury. (Id. ¶ 32). After surgery, Plaintiff was in a coma for seven weeks. (Id. ¶ 33). Plaintiff lost ten teeth because of the assault and now requires a "special lens to see" because of eye damage he sustained. (Id. ¶ 36). Cognitive assessments in 2008 and 2009 have indicated that Plaintiff has difficulties in learning and memory. (Id. ¶¶ 38-39).

Inmate Jackson eventually pled guilty to first degree assault and was sentenced to 98 months to be served consecutive with his life sentence. (Id. ¶ 42).

On October 8, 2007, Plaintiff submitted a kite regarding the February 2007 assault. (Id. ¶ 43). He was informed that "the claim's process was the improper avenue because such a process only 'covers injuries that are sustained when performing assigned duties.'" (Id.) He was directed on the "proper path [to] file a tort claim." On February 16, 2008, Plaintiff again attempted to file the same form and was again advised that he needed to file a tort claim. (Id. ¶ 44). Plaintiff eventually filed a tort claim against Defendant MNDOC, which was denied on

February 13, 2009 because Plaintiff failed to "establish that any department employee violated a duty or acted negligently." (Id. ¶ 46).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. On a motion to dismiss, the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id. Courts must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." Iqbal, 556 U.S. at 679-80 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Farnham St. Fin., Inc. v. Pump Media,

Inc., No. 09-233 (MJD/FLN), 2009 WL 4672668 at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 129 S. Ct. at 1949).

Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). When analyzing a complaint on a 12(b)(6) motion to dismiss, courts should read the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

## III. DISCUSSION

Although Plaintiff initially asserted five separate causes of action in his Complaint, as part of his response to the Defendants' motion to dismiss, Plaintiff explicitly and voluntarily dismissed several of the claims against various Defendants. (Mem. in Opp'n to Defs.' Mot. to Dismiss [Docket No. 17] at 1-2).[1] He also appeared to implicitly dismiss several other claims, as

---

[1] Defendants' argued that Plaintiff wrote his Complaint in an improper "shotgun pleading" manner—asserting every claim against every defendant. (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss [Docket No. 18] at 4). This Court has recently stated on several occasions that shotgun pleadings are disfavored in this district and that a plaintiff must follow the requirements of Rule 8 in providing a short and plain statement of the claim showing that the pleader is entitled to relief. See Gurman v. Metro Housing and Redevelopment Authority, 842 F. Supp.2d 1151, 1153 (D. Minn. 2011) ("[t]his Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' complaints— complaints in which a plaintiff brings every conceivable claim against every conceivable defendant."); Johnson v. Minn. Dept. of Corr., No. 12-784 (PAM/JSM), 2012 WL 2050246, at *1 (D. Minn. May 15, 2012) ("in order to state an actionable civil rights claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that purportedly violated the plaintiff's federal constitutional rights."); Tatone v. SunTrust Mortg., Inc., No. 11-1862 (MJD/JSM), 2012 WL 763581, at *9 (D. Minn. Mar. 8, 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."); Tully v. Bank of America, N.A., No. 10-4734 (DWF/JSM), 2011 WL 1882665, at *6 (D. Minn. May 17, 2011). Defendants' argument is not entirely without merit, as the manner in which the Complaint is drafted in this case closely resembles a shotgun pleading. Although it would be within the Court's discretion to dismiss the Complaint without prejudice, Plaintiff's memorandum in response to the motion and subsequent representations at the hearing on the motion, by dismissing most of the Defendants for most of the claims, sufficiently identified the

4

he did not argue against their dismissal in his written submissions. At the hearing on the motion, the Court inquired as to which claims Plaintiff intended to pursue and which he sought to voluntarily dismiss. Plaintiff stated on the record that the **only** claims he wished to continue to maintain are 1) the 18 U.S.C. § 1983 claims against only Defendants Fairbanks and Officer John Doe for failure to protect Plaintiff from the attack and failure to intervene during the attack; 2) the negligence claim against all Defendants in their individual capacities; and 3) the negligent supervision claim against all Defendants in their individual capacities.[2]

### A. § 1983 claim against Defendants Fairbanks and Officer John Doe for failure to protect Plaintiff from the attack

The Eighth Amendment to the United States Constitution guarantees prisoners the right to be free from cruel and unusual punishment. This prohibition "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." Young v. Selk, 508 F.3d 868, 871-72 (8th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "An Eighth Amendment violation is actionable under section 1983 if the plaintiff shows that the 'defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.'" Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994) (quoting Falls v. Nesbitt, 966 F.2d 375, 377-78 (8th Cir. 1992)). To demonstrate that prison official acted unreasonably and violated the prisoner's Eighth Amendment right, Plaintiff must show that they were "deliberately indifferent to a

---

claims asserted, such that the Defendants had the opportunity to respond to the claims and the Court need not dismiss the Complaint for improper pleading.

[2] Based on the representations of Plaintiff's counsel to the Court, it is recommended that the following claims be dismissed: 1) Plaintiff's § 1983 claims against all Defendants except for Defendants Fairbanks and Officer John Doe for failure to protect Plaintiff from the attack and failure to intervene during the attack; 2) Plaintiff's Monell claim; and 3) Plaintiff's intentional infliction of emotional distress claim against all Defendants.

'substantial risk of serious harm.'" Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010) (quoting Farmer, 511 U.S. 828).

Defendants argue that a claim against them in their individual capacities must fail because Plaintiff failed to "plead facts showing [Defendants] were deliberately indifferent to the need to protect him from a substantial risk of serious harm in violation of the Eighth Amendment." (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss at 5).

"To prove deliberate indifference [claim], an inmate must make a two-part showing: The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." Nelson, 603 F.3d at 446 (internal quotation marks omitted). With respect to the first prong of the deliberate indifference test, a deprivation is considered sufficiently serious "when the official's failure to protect resulted in the inmate being 'incarcerated under conditions posing a substantial risk of serious harm.'" Id. As to the second prong of the deliberate indifference test, "[a]n official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." Young, 508 F.3d at 872. The Plaintiff must allege facts that show "the defendants who are being sued were actually aware of the risk of serious harm and deliberately ignored it." Uselman v. Riser, 2011 WL 6992031, at *3 (D. Minn. Dec. 22, 2011).

With respect to the first prong, Plaintiff argues that "[c]ommon sense dictates that an abandoned guard post in the metal shop, which was full of blunt and sharp objects, has the potential for exposing an inmate to serious harm." (Mem. in Opp'n to Defs.' Mot. to Dismiss at 10). Although Defendants argue that the facts regarding blunt and sharp objects were not pled in the Complaint and the Court should not consider them, Defendants generally do not appear to

6

dispute this element. (See Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss at 5-9). Nevertheless, the Court need not decide this issue because, even if such a substantial risk existed, Plaintiff has failed to allege any facts that could show that Defendants were aware of any substantial risk of serious harm and deliberately ignored it.

Plaintiff argues that the **inherent** nature of the metal shop should have placed Defendants on notice of the substantial risk. (Mem. in Opp'n to Defs.' Mot. to Dismiss at 10) (emphasis added).

This Court very recently analyzed a claim with a similar fact pattern in which a prison guard's leaving his post resulted in an injury to an inmate from an attack by another inmate. See Johnson v. Minn. Dept. of Corr., 2012 WL 2050246, at *1 (D. Minn. May 15, 2012) (report and recommendation), adopted 2012 WL 2045959 (D. Minn. June 6, 2012). In Johnson, an inmate "allegedly threw a cup of scalding coffee at Plaintiff, which caused serious burns to Plaintiff's face, shoulder and back." Id. The plaintiff alleged that the guard post overseeing the area was not manned even though a correctional officer had stated that the guard post must be manned at all times and had criticized the two unidentified correctional officers who should have been manning the guard post at the time of the alleged assault. Id. As in this case, the plaintiff asserted that various individuals violated his Eighth Amendment rights by permitting the attack to occur. Id. After first noting the same two-part deliberate indifference test described above, the Court held that the plaintiff's claim failed to demonstrate the second element of the test:

> Here, Plaintiff has failed to plead sufficient facts to state an actionable "failure to protect" claim against any of the named Defendants. Even if Plaintiff's factual allegations satisfy the "objective" requirement for such a claim, (i.e., that Plaintiff was exposed to a substantial risk of serious harm), the Eighth Amendment claim clearly fails, because there are no factual allegations to support the "subjective" requirement. Plaintiff has not pleaded any facts showing that any of the Defendants actually knew about the risk of harm to Plaintiff, and failed to respond

7

> in a reasonable manner. Nothing in Plaintiff's complaint suggests that any Defendant had any knowledge that Zencius posed a threat to Plaintiff's safety.
>
> The true gist of Plaintiff's complaint is that Defendants were careless—i.e., they *should have known* that prison inmates are likely to hurt each other if they are not properly supervised, and they should have done more to protect the inmates at MCF–STW. In particular, Plaintiff contends, Defendants should have made sure that the guard posts at MCF–STW were properly staffed.
>
> Plaintiff's allegations show only that Defendants were simply negligent, at worst. It is well settled, however, that "[n]egligence on the part of the prison official is insufficient to satisfy the subjective component [of a failure to protect claim]; the official must recklessly disregard a *known,* excessive risk of serious harm to the inmate." *Norman v. Schuetzle,* 585 F.3d 1097, 1104 (8th Cir.2009) (emphasis added).
>
> Again, Plaintiff has not alleged any facts suggesting that any named Defendant had any foreknowledge that Zencius posed a threat to Plaintiff's safety. There are no facts showing that any Defendant had a culpable state of mind. Therefore, Plaintiff has failed to plead an actionable Eighth Amendment failure-to-protect claim.

Id. at *4-5.

Like in Johnson, Plaintiff here has failed to allege any facts demonstrating that Defendants Officer John Doe or Fairbanks had any actual knowledge or awareness that the attacking inmate, Jackman, posed a threat to Plaintiff. The Complaint provides no factual allegations for any animosity between Jackman and Plaintiff such as to suggest that this was anything but a surprise attack. "[P]rison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998). "An 'official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" Id. at 1152 (quoting Farmer, 511 U.S. at 838).

8

Plaintiff argues that Johnson is distinguishable because the danger in the present case should have been apparent to Defendants generally in light of the inherently dangerous nature of the metal shop. (Mem. in Opp'n to Defs.' Mot. to Dismiss at 10-11).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. As such, "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" Id. However, "[i]f the Defendants were strictly liable for the inherent and generalized danger every inmate reasonably poses to others, prison officials would be without any defense." See Leatherwood v. Cohen, 2011 WL 4435807, at *3 (D. S.C. Sept. 23, 2011).

Here, Plaintiff's Complaint is silent as to any allegations of facts to show the existence of a longstanding, pervasive, well-documented, or expressly noted substantial risk of inmate on inmate attacks in the metal shop at issue. In the absence of any such allegations that could serve to put officers on notice of a substantial risk of an attack, Plaintiff has failed to state a claim for which relief may be granted. Furthermore, Plaintiff's Complaint fails to allege any facts that would suggest any alleged inherent danger was present in the metal shop where the attack occurred.[3]

---

[3] In his memorandum in support of the motion, Plaintiff argued that the metal shop was inherently dangerous because of "access to instruments that could be used for weapons." (Mem. in Opp'n to Defs.' Mot. to Dismiss at

For these reasons, the Court finds that Plaintiff has failed to allege sufficient plausible facts that would support a § 1983 failure-to-protect claim.

### B. § 1983 claim against Defendant Fairbanks[4] for failure to intervene during the attack on Plaintiff

Plaintiff alleges that Defendant Fairbanks was deliberately indifferent during the attack. (Mem. in Opp'n to Defs.' Mot. to Dismiss at 12). Defendants argue that "Plaintiff fails to allege facts showing that Fairbanks was deliberately indifferent to his safety during the assault." (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss at 8).

"A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." Williams v. Mueller, 13 F.3d at 1216. However, it is also said that "prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another **when intervention would place the guards in danger of physical harm**." Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) (emphasis added).

Defendants argue that, as a matter of law, Fairbanks had no duty to intervene because the assailant was using a lead pipe, and if Fairbanks intervened, it would have made the situation worse. (Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss at 8). They also argue that the alleged facts demonstrate that Fairbanks's radio call for help was sufficient to satisfy his duty. (Id.) At this specific stage in the litigation, however, the Court disagrees.

---

11). However, such facts were not alleged in the Complaint, and on the record before the Court, without speculating, the Court cannot say that the metal shop at issue was "inherently dangerous" beyond the mere generalized danger that inmates may pose to one another.
[4] This claim is not, and cannot be, asserted against Defendant Officer John Doe because the Complaint acknowledges that he was not present during the attack and does not allege that he was aware of the attack while it was ongoing.

Implicit in the Williams holding is that a prison official may be found to act with deliberate indifference when he or she fails to intervene in an assault. See 13 F.3d at 1216. Defendants do not appear to question this general principle. Instead, they appear to argue that, based on Arnold v. Jones, 891 F.2d 1370 (8th Cir. 1990), as a matter of law, a prison official need not intervene when the official is unarmed and the attack is by an armed inmate.

Arnold does not stand for the proposition that an unarmed official need not ever intervene in a violent prisoner on prisoner attack. In Arnold, the Eighth Circuit held that, up to 1985 (when the attack in Arnold occurred), as a matter of law, a prison official did not have a duty to intervene in a violent fight between inmates when the official is unarmed and "vastly outnumbered by the inmates." 891 F.2d at 1373-74. The Eighth Circuit has since further explained that its holding in Arnold meant only that an unarmed guard need not intervene "when intervention would place the guards in danger of physical harm." Prosser, 70 F.3d at 1008; see also Williams, 13 F.3d at 1216 ("[an] unarmed guard['s] failure to intervene does not constitute [an] Eighth Amendment violation when there is evidence that intervention might result in serious injury or escalate the situation."). However, in both Arnold and Prosser, there were additional circumstances that significantly increased the danger of physical harm to the official. See Arnold, 891 F.2d at 1373 (no duty to intervene in a violent fight between several inmates when the officials were unarmed and were "vastly outnumbered"); Prosser, 70 F.3d 1006 ("[the official] was alone at the end of the walkway, with at least a dozen inmates standing between him and the other guards").

Here, the Court does not have any information as to whether Fairbanks was armed or unarmed, and on the present record before the Court, the only factor that appeared to pose a danger to Fairbanks was the use of the lead pipe during the assault on Plaintiff. Unlike in

11

Arnold, the available information in the present case does not provide or allege that there were a vast number of inmates that needed to be controlled—but rather, only one. Moreover, a MINNCOR employee (also unknown whether they were armed or unarmed) intervened to stop the attack without any alleged harm resulting to the other MINNCOR employee. If the Court were to adopt Defendants' argument, that the attacker being armed with a lead pipe is alone sufficient to absolve Fairbanks of any duty to intervene as a matter of law, the Court would essentially be ignoring the examples of Arnold, Prosser, and Williams, cited above, that demonstrate more than the solitary alleged fact a prison official is unarmed in the presence of a prisoner on prisoner assault necessary to absolve the prison official of the duty to intervene.

Another district court recently explained that "[i]t is generally agreed that unarmed prison guards have no duty to intervene in an unanticipated attack by an *armed* inmate upon another inmate, where intervention would place the guards at risk of serious physical injury." See Lambert v. Blackwell, 2007 WL 2459841, at *4 (D. N.J. Aug. 24, 2007) (emphasis in original). The court's holding that there was no duty to intervene was based on three elements: 1) the prison guards were unarmed; 2) the inmate was armed; and 3) intervention would have placed the guards at risk of serious physical injury. Therefore, under Lambert, which appears to be entirely consistent with Eighth Circuit law, a mere showing that the guards were unarmed and that the inmate was armed is not dispositive of the issue; the Court must also consider the third element of whether intervention under the circumstances would have placed the guard at risk of serious physical injury. In the present case, at this stage in the litigation, the first two elements aside, there are no facts upon which the Court could find that intervention would have put Fairbanks in danger of or at risk of sustaining a serious physical harm; to the contrary, on the

12

present record, another a MINNCOR employee easily intervened to stop the attack on Plaintiff without sustaining any harm.

The record on the present Rule 12(b)(6) motion by Defendants does not permit the resolution of whether Defendant Fairbanks was relieved of any duty to intervene in the assault on Plaintiff.[5]

Indeed on the basis of the Complaint and limited record now before the Court, whether Fairbanks met his duty as asserted by Plaintiff by merely radioing for help, as Defendants assert, and whether he did so in an appropriate amount of time, is question of fact. See Arnold, 891 F.2d at 1373 ("If such a duty existed, then a **factual** issue would be raised as to whether the defendants' refusal to intervene was constitutionally appropriate." (emphasis added)).

For the reasons stated above, the Court finds that, at this time and on the present record, Plaintiff has alleged sufficient facts to state a § 1983 claim against Defendant Fairbanks for failing to intervene to stop the attack on Plaintiff once it had begun.

### C. State law negligence and negligent supervision claims against all individual Defendants in their individual capacities[6]

Before addressing the merits of Plaintiff's state law tort claims, the Court must decide whether it should exercise supplemental jurisdiction over these claims.

---

[5] Nothing prevents Defendants from raising and challenging the duty of Fairbanks to act under the circumstances of this case at the summary judgment stage, when a more complete record will likely provide further detail into the circumstances of the attack, such as whether Fairbanks was armed and whether there were any other circumstances suggesting a danger or risk of serious injury above and beyond the general risk inherent in intervening in an any prisoner on prisoner assault. Indeed, all three cases on which Defendants rely for the proposition that Fairbanks had no duty act as a matter of law were decided after a motion for summary judgment had been made, when a more complete record had been developed. See Prosser, 70 F.3d 1005 (appeal from denial of the defendants' motion for summary judgment); Arnold v. Jones, 891 F.2d 1370 (8th Cir. 1989) (same); Winfield v. Bass, 106 F.3d 525 (4th Cir. 1997) (same).

[6] The individual Defendants include 1) Joan Fabian; 2) Tom Roy; 3) Michelle Smith; 4) John King; 5) John Doe Correctional Officer; 6) John Doe Correctional Lieutenant; 7) John Fairbanks; and 8) John Doe MINNCOR employee.

"The Court has broad discretion in deciding whether to continue hearing state claims [even] following dismissal of federal claims." Shimer v. Shingobee Island Water and Sewer Com'n, No. 02-953 (JRT/FLN), 2003 WL 1610788, at *8 (D. Minn. Mar. 18, 2003) (explaining that "this Court is reluctant to remand the case back to state court after hearing and resolving dispositive motions."). "In determining whether to exercise supplemental jurisdiction, courts consider factors such as judicial efficiency, convenience, and fairness to the litigants." Hylla v. Transp. Commc'n Int'l Union, No. 06-4700 (JRT/RLE), 2007 WL 2892021, at *4 (D. Minn. Sept. 28, 2007). Here, because the Court has not dismissed all federal claims and because the remaining federal claim is closely related to and will involve the same underlying facts as the state law negligence claims, the Court finds that exercising supplemental jurisdiction is appropriate. See Besett v. Wadena Cnty., 2010 WL 5439720, at *18 n.8 (D. Minn. Dec. 7, 2010) (finding that supplemental jurisdiction is appropriate where the state law claims are closely related and involve the same factual events as federal claims); Stovall v. Lakanu, 2006 WL 3350686, at *4 (D. Minn. Nov. 17, 2006) (finding that exercising supplemental jurisdiction is appropriate where the Court has not dismissed the related federal law claim).

On the merits, the Court first notes that with respect to Defendants John Fabian, Tom Roy, Michelle Smith, and John King, there are no factual allegations in the Complaint as currently pled upon which the Court could find support for any claims of individual liability. As such, the Court recommends that the negligence and negligent supervision claims against these individuals in their individual capacities be dismissed.

As to Defendant Lieutenant John Doe, Plaintiff alleges that Defendant Lieutenant John Doe had assigned Officer John Doe to the metal shop; however, there are no factual allegations in the Complaint that Defendant Lieutenant John Doe was aware that Officer John Doe had

abandoned his post at the time of the assault on Plaintiff, that he knew that Officer John Doe had abandoned his post on previous occasions, or that he was required to periodically check to ensure that Officer John Doe was still at his post. As such, Plaintiff has failed to allege any facts upon which the Court could find that Defendant Lieutenant John Doe was individually liable for negligence or negligent supervision; thus, the Court recommends that the negligence and negligent supervision claims against Defendant Lieutenant John Doe be dismissed.

As to Defendant MINNCOR Employee John Doe, Plaintiff has also failed to allege any facts in the Complaint upon which the Court could find support for any claim of individual liability. The Court recommends that the negligence and negligent supervision claims against Defendant MINNCOR Employee John Doe should be dismissed as well.

As to Defendant Fairbanks, Plaintiff alleges that Fairbanks was negligent in his duty to supervise the metal shop and in his duty to intervene during the attack. As to Defendant Officer John Doe, Plaintiff alleges that Officer John Doe was negligent in his duty to keep the metal shop secure.

To prevail on a negligence claim, under Minnesota law, Plaintiff must allege and eventually prove four elements: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995). The first element is the only one at issue before the Court.

Under Minnesota law, an affirmative duty to act may arise when a special relationship exists between the parties. See Harper v. Herman, 499 N.W.2d 472, 474 (Minn. 1993); Bjerke v. Johnson, 742 N.W.2d 660, 665 (Minn. 2007). One such relationship exists when a person has "custody of another person under circumstances in which that other person is deprived of normal

15

opportunities of self-protection." Harper, 499 N.W.2d at 474. Although "[p]rison officials have no duty to protect inmates from violence they could not reasonably anticipate," they do have a duty to prevent reasonably foreseeable injuries. Cooney v. Hooks, 1994 WL 246083, at *1 (Minn. Ct. App. 1994) (citing Flechsig v. United States, 991 F.2d 300, 304 (6th Cir. 1993)). Even the United States Supreme Court has explained that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). Thus, the real question is whether the risk of an attack in the metal shop was foreseeable.

The determination of foreseeability, in regard to determining the duty owed in a negligence claim, is a question for the court. See Domagala v. Rolland, 805 N.W.2d 14, 27 (Minn. 2011) ("Foreseeability of injury is a threshold issue related to duty that is ordinarily properly decided by the court prior to submitting the case to the jury."). "To determine whether an injury was foreseeable, we look to the defendant's conduct and ask whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury." Id. "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether the possibility of an accident was clear to the person of ordinary prudence." Id. (internal quotation marks omitted). "Close questions on foreseeability should be given to the jury." Lundgren v. Fultz, 354 N.W.2d 25, 28 (Minn. 1984).

Here, it would be reasonable to expect that an inmate on inmate assault could occur if and when Officer John Doe abandoned his post in the metal shop. Supporting this inference is the fact that a specific officer had been assigned to guard the metal shop. The abandonment of the guard post would implicitly put at risk that which is meant to be guarded—which would include any attack or other disruptive conduct by an inmate. Therefore, it should have been

16

foreseeable to Officer John Doe that when he abandoned his assigned guard post in the metal shop, an inmate could be attacked by another inmate.

Similarly, Plaintiff's claims against Defendant Fairbanks for negligence and negligent supervision should survive dismissal. Defendant Fairbanks, as the foreman of the metal shop, was or at least should have been aware that the correctional officer who had been assigned to guard the metal shop had abandoned his post, and it should have been foreseeable to Defendant Fairbanks that as a result of that abandonment an inmate on inmate attack could occur. The Minnesota Court of Appeals has previously held that the absence of prison officials in a recreation area could be the basis of a negligent supervision claim. Lyons v. State by Humphrey, 366 N.W.2d 621, 624 (Minn. Ct. App. Apr. 23, 1985) (reversing the district court's summary judgment ruling on the negligent supervision claim in favor of the defendants). Furthermore, as already discussed above, Defendant Fairbanks had a duty to protect Plaintiff and intervene or otherwise act once the attack began. Whether the radio call for help, and how soon the call was made, was sufficient to satisfy this duty on the part of Defendant Fairbanks is a question of fact that cannot be decided on the present Rule 12(b)(6) motion to dismiss.

For the foregoing reasons, the Court recommends that all negligence and negligent supervision claims against Defendants should be dismissed except for the negligence claim against Defendant Officer John Doe and the negligence and negligent supervision claims against Defendant Fairbanks.

### IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Defendants' Motion to Dismiss [Docket No. 9] be **GRANTED** in part and **DENIED** in part as more fully described above.

Dated: November 7, 2012  s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**
Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by November 21, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.